UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARAJ KIDWAI | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No.: 4:12-cv-00455 |
| | § | |
| ST. MATTHEW'S UNIVERSITY | § | |
| SCHOOL OF MEDICINE, JOHN | § | |
| P. DOCHERTY, W. CHRISTOPHER | § | |
| CROLEY and BARRY J. COOPER | § | |
| Defendants. | § | |

**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

TO THE HONORALBE JUDGE OF SAID COURT:

COMES NOW, Maraj Kidwai, Plaintiff in the above styled and numbered cause and files this, his Plaintiff's First Amended Complaint and for causes of action would plead as follows:

## I. Parties and Personal Jurisdiction

1. The Plaintiff, Maraj Kidwai (Plaintiff or Kidwai), is a natural person, residing at 20303 Fairway Trails Lane, Spring, Texas 77379. From January 2007 through the present Kidwai has been continuously enrolled in St. Matthews University School of Medicine. However, under the policy change that forms the basis of the Plaintiff's complaint he will be involuntarily withdrawn on or about April 8, 2012

2. Defendant St. Matthews University School of Medicine (Defendant or SMU) is a foreign medical school located in the Cayman Islands with its campus address at P.O. Box 30992, Grand Cayman, KY1-1204, Cayman Islands and its administrative offices at 12124 High Tech Avenue, Suite 350, Orlando, Florida 32817. SMU is not a "nationally

prominent educational institution, but rather is a small, obscure medical school located in the Cayman Islands. SMU maintains administrative offices in the United States in Orlando Florida and is owned by R3 Education, a Massachusetts corporation. SMU actively recruits medical students throughout the United States and specifically in the State of Texas, including the Plaintiff to this lawsuit. In addition to its specific contact with Texas regarding this Plaintiff, SMU has relationships with and has recruited numerous students from Texas. Furthermore, it has continuing and systematic contacts with the state of Texas by virtue of its clinical rotation component of its curriculum that takes place at the University of Texas Southwestern in Dallas, Texas. Therefore under the Texas Long Arm Statute, Texas Civil Practice and Remedies Code, 17.042, SMU has sufficient related and unrelated minimum contacts to make itself amenable to the jurisdiction of United States courts. SMU has waived service of process and agreed to answer in a timely manner. SMU has waived service and agreed to file an answer. This Court therefore has personal jurisdiction over the Defendant SMU.

3. John P. Docherty (Docherty) is a natural person, with a business address Ny Hospital Cornell Med Ctr, 21 Bloomingdale Rd., White Plains, NY, 10605. Dockerty is a member of the SMU board of trustees and based on information and belief is one of the three individuals who is responsible for making policy at SMU. Docherty's representations made as to SMU's graduation requirements that induced Plainitff to attend SMU and then those subsequently made that alter the requirements were clearly directed at the Plaintiff, who is and has been a Texas resident. Those representations from the basis of a tort claim and are specifically related to this case. In addition, Docherty may be a defendant and seems clearly involved in a case styled Allen Jones and

2

the State of Texas v. Johnson & Johnson, now pending in a state district court in Travis County Texas. Therefore under the Texas Long Arm Statute, Texas Civil Practice and Remedies Code, 17.042, Docherty has sufficient related and unrelated minimum contacts to make himself amenable to the jurisdiction of United States courts. Defendant Docherty has waived service of process and agreed to answer in a timely manner. This court therefore has personal jurisdiction over Defendant Docherty.

4. W. Christopher Croley (Croley) is a natural person, with a business address of Rush Medical Center, 1653 W. Congress Pkway #22. Chicago, IL 60612. Croley is a member of the SMU board of trustees and based on information and belief is one of the three individuals who is responsible for making policy at SMU. Croley's representations made as to SMU's graduation requirements that induced Plaintiff to attend SMU and then those subsequently made that alter the requirements were clearly directed at the Plaintiff, who is and has been a Texas resident. Those representations from the basis of a tort claim and are specifically related to this case. Therefore under the Texas Long Arm Statute, Texas Civil Practice and Remedies Code, 17.042, Croley has sufficient related and unrelated minimum contacts to make himself amenable to the jurisdiction of United States courts. Defendant Croley has waived service of process and agreed to answer in a timely manner. This court therefore has personal jurisdiction over Defendant Croley.

5. Barry J. Cooper (Cooper) is a natural person, with a business address of Cornell University Department of Biomedical Sciences, college of Veterinary Medicine, Ithaca, NY 14853-6401. Cooper is a member of the SMU board of trustees and based on information and belief is one of the three individuals who is responsible for making policy at SMU. Cooper's representations made as to SMU's graduation requirements that

induced Plaintiff to attend SMU and then those subsequently made that alter the requirements were clearly directed at the Plaintiff, who is and has been a Texas resident. Those representations from the basis of a tort claim and are specifically related to this case. Therefore under the Texas Long Arm Statute, Texas Civil Practice and Remedies Code, 17.042, Cooper has sufficient related and unrelated minimum contacts to make himself amenable to the jurisdiction of United States courts.  Defendant Cooper has waived service of process and agreed to answer in a timely manner. This court therefore has personal jurisdiction over Defendant Cooper.

6.     Defendants Dockerty, Croley and Cooper are hereinafter referred to collectively as the Board. Defendants SMU, Dockerty, Crowley and Cooper are hereinafter referred to collectively as Defendants.

## II.  Subject Matter Jurisdiction and Venue

7.     This Court has subject matter jurisdiction over this case pursuant to the provisions of 28 U.S.C.A §1332 in that complete diversity of citizenship exists between the Plaintiff, a resident of the State of Texas and the defendants who are either Florida residents and/or a resident of a foreign country.  In addition the amount in controversy exceeds $75,000. Venue is proper in the United States District Court for the Southern District of Texas pursuant to the provisions of 28 USCA §1391 (a) (2) and (3), (c) & (d).

## III. Statement of Facts

8.     In January 2007 the Plaintiff enrolled in SMU as a transfer medical student from St. George's University Medical School of Grenada.  SMU is a medical school located on Grand Cayman, Cayman Island, British West Indies.  Plaintiff was recruited via the

internet and United States mail through SMU's administrative offices located in Orlando, Florida. Tuition at SMU was approximately $11,000 per trimester. SMU requires ten full payments, but because Plaintiff transferred to SMU after his first semester, he was required to pay only nine. Eight of the Plaintiff's payments totally $86,420 were made prior to May 6, 2010 when SMU unilaterally and without adequate notice, altered its graduation requirements. In 2008 SMU lost its ability to provide financial aid for its students, and as a result Plaintiff has paid out-of pocket almost $60,000 for tuition and fees and almost $100,000 for living expenses associated with his various clinical rotations. In addition Plaintiff owes another $91,331 for the financial aid he received. As of the date of this complaint Plaintiff has expended almost $250,000 in tuition, fees and living expenses in an effort to obtain a medical degree from SMU.

9. SMU's curriculum is set up so that students attend classes at the Grand Cayman campus until they have successfully completed all the basic science classroom courses necessary to begin actual clinical rotation and have passed Step 1 of the USMLE exam. At that point students receive their clinical training at a hospital (s) or medical facility (ies) in the United States or select locations in England. Plaintiff received his clinical training and completed his rotations at various medial facilities in the United States including Florida Hospital in Orlando, Florida, AIME/Norwegian American Hospital in Chicago, Illinois, Northern Virginia Mental Health Institute, Florida Hospital in Kissimmee, Florida and the Broward County Medical Examiners' Office in Ft. Lauderdale, Florida.

10. When Plaintiff enrolled in January 2007 SMU's graduation requirements were clearly defined in the student handbook. In addition to completing all the required

5

classes with a passing grade point average and passing all clinical rotations, a student seeking to graduate had to satisfy the following:

-Meet all of the financial obligations of the medical school.

-Have all required administrative documents on file at least two weeks prior to graduation.

-Submit an **Intent to Graduate** (ITG) form to one's Clinical Coordinator.

-Pay the $500 graduation fee.

As of the date of this complaint Plaintiff has paid over $100,000 in tuition and fees as required and in a timely manner, filed all of the necessary documents in a timely manner, submitted his intent to graduate form and was prepared to pay his $500.00 graduation fee, which SMU continues to invoice him for despite not allowing him to graduate. The graduation requirements in place in 2007 remained virtually identical for three and a half years. In May 2010, with Plaintiff in his fourth year and having completing over 50% of his clinical rotations, SMU changed its graduation requirements to add an additional state medical licensing requirement as a precondition to graduation.

11. USMLE is an acronym that stands for United States Medical Licensing Examination. At the time Plaintiff enrolled in January 2007, USMLE Step 1 was required by SMU in order for Plaintiff or any other student to begin clinical rotations. Plaintiff took and successfully passed the USMLE Step 1 exam as evidenced by his starting and completing of his clinical rotation. However, USMLE step 2 was never a graduation requirement prior to May, 6 2010. SMU did utilize a comprehensive examination, the NBME, for each core clinical rotation. The NBME test score counted for 30% of a student's clinical rotation grade and Plaintiff successfully completed all of his clinical rotations. However, on May 6, 2010 SMU, acting through its Defendant

Board, unilaterally and without warning altered its graduation requirements to require anyone graduating on or after August 15, 2010 to pass both the Clinical Skills (CS) and Clinical Knowledge (CK) portions of the USMLE Step 2 exam. Plaintiff was given one year from the completion of his clinical rotations to do so.

12.     Once a student reaches the point where he or she is entering his or her clinical rotations the ability to transfer to another medical school becomes difficult if not impossible. Transferring options vary from one school to the next. Some schools will not allow a transfer student at all regardless of what stage of study he or she is in. Others may allow transferring but only if a student starts his course of study over again, in effect forcing a student to enroll as a new student and making the notion of a transfer meaningless. Some schools allow transfers but force students to go back to their third year or earlier. The completion of a student's basic sciences generally serves as a point where transferring is either impossible because of the restrictions imposed by the new school, or the economic demands of starting over or going back are too onerous to overcome. SMU only allows students to transfer at a point no later than the completion of their second year. Therefore, when SMU and the Defendant Board altered the graduation requirements it did so at a point where Plaintiff had paid over $86,000 of his total tuition and under circumstances where he could no longer successfully transfer to another medical school.

13.     There are at numerous schools in the Caribbean that do not require the USMLE Step 2 as a precondition to graduation. Had Plaintiff been afforded any reasonable notice of SMU's change in graduation requirements he could have transferred prior to beginning his clinical rotations. The change in graduation requirements came in May 2010 and

7

became effective for persons graduating on or after August 15, 2010. Plaintiff completed his clinical rotation in April 2011 and should have graduated in May 2011. Because of the new impediment to graduation Plaintiff began to take the USMLE in June 2010 in order to even have a chance to graduate when he had originally planned. He took the CS exam twice and passed it on his second attempt in early 2011. However, he did not pass the CK portion after three attempts, two of which came while he was still doing his clinical rotations and the final effort in July 2011 after he completed his rotations.

14. Federal and state courts across the United States have examined the relationship between students and institutions of higher learning/professional schools and have universally found that there is a contractual relationship between the two. This is particularly true when the institution is not publicly, but rather privately funded. Under such circumstances not only is the student-university relationship contractual in nature but the terms of the contract may be derived from a student handbook, catalog, or other statement of university policy. It is also generally accepted that the portion of the contract that that applies to graduation are the terms in place at the time the student enrolled. In other words, when a student is admitted to a private university there is an implied contract that if the student complies with the terms prescribed by the university that he or she will receive a degree.

15. While it is implicit in the student's contract with the university upon his or her matriculation that the student agrees to comply with the university's rules and regulations, an academic institution does not have an unfettered liberty to modify its graduation requirements well into a student's course of study. Thus, while the university is entitled

to modify its graduation requirements, such a modification must be in the proper exercise of its educational responsibility.

16.     Thus, while the university's general contract with its students implies a right to change the university's academic degree requirements, such changes cannot be arbitrary or capricious. Plaintiff examined the conduct of SMU within the context of the existing law prior to filing his complaint.  Plaintiff could find no fact scenario as egregious as the one instituted by SMU.  In this instance the Board changes did not come "midstream," but literally at the end of Plaintiff's academic journey through SMU.  Unlike the body of law that exists on this issue, SMU's actions would seem to be arbitrary and capricious conduct in its most pristine form:

a.      An examination of the only policy statement regarding the change states: "Going forward, the school will similarly require passing scores on the USMLE Step 2 Clinical Knowledge and Step 2 Clinical Skills as a requirement for graduation…The new graduation requirement will apply to those students whose projected graduation falls on or after August 15, 2010 [sic] Students will have up to 12 months after the completion of their clinical rotation to satisfy this requirement.  Failure to successfully complete this requirement with the required timeframe…will result in the withdrawal from the University's M.D. program."  There is literally no statement of policy that even attempts to draw a nexus between this radical change in graduation requirements and the proper exercise of its educational responsibility. Nor is their any policy statement in the 2011 catalog where the change first appears outside the May 6, 2010 E-mail.

b.      Plaintiff must satisfy this arbitrary and capricious requirement or lose over $100,000 in tuition of which over $86,000 had been paid at the time the change was made.  In addition, Plaintiff would lose all of the $150,000 in living expenses required to attend medical school.

c.      Unlike the fact scenarios that dominate this area, this change did not come with four years notice, or even one years notice, in other words with some warning of what was to come that would have allowed the Plaintiff to graduate under the prior requirements that were in place when he enrolled.  Instead the change was virtually immediate because only persons graduating on May 1, 2010, the same month the change was announced, would be unaffected. The next graduation date was August 20, 2010.

d.      In addition to being immediate, had the new requirement been consistent with those that have been upheld by the courts, only Plaintiff's failure to have met the existing

9

requirements would have equitably justified the imposition of the new requirements. In many of the situations construed by the courts the Plaintiff failed classes or ceased to make basic academic progress that would have allowed the student to have completed his studies so as to graduate under the previous requirements. In this case Plaintiff was not dilatory in any respect. When the requirements were imposed it was physically impossible for him to complete his clinical rotation so as to graduate before August 15, 2010. His completion of his rotations in April 2011 was on schedule and would have allowed him to graduate in May 2011. Had this requirement not been imposed he would have finished even earlier, having taken two months leave from clinical rotations to study for the Step 2 CK exam. Had that been the case his clinical rotations would have ended in late February 2011 making graduation in May 2011 a certainty.

17. Based upon information and belief SMU's modification to its graduation requirements was completely unconnected to any educational responsibility. SMU is a private, for-profit institution. Shortly after Plaintiff enrolled, SMU lost the ability to provide any non-scholarship financial aid. The non-U.S. medical school market is very competitive. Plaintiff believes that SMU's change in policy and the virtual immediate effective date of the change was to somehow secure the ability to provide financial aid. The sudden policy change seems to be designed to make SMU more attractive to potential students who unlike the Plaintiff, do not have the resources to self-finance their medical education. When Plaintiff pressed SMU's chancellor, John Marvin as to why this policy was being so unfairly applied with such an immediate effect, he was told "I understand your concern. I would probably feel the same way if I was in your shoes, but this is something the Board has been considering for a while." The fact the Board had been contemplating such a change and did not provide any reasonable warning or notice adds to the arbitrary and capricious nature of the change.

18. Not only is the Plaintiff now facing the complete loss of over $250,000 if his diploma is not conferred as it should have been, but he has applied for jobs where a medical license is not a requirement but a diploma indicating graduation from a medical

10

school is a necessity. In addition to having breached its contract with the Plaintiff, SMU, acting through its Board of Trustees made certain written representations as to the requirements of graduation in 2007. Those representations were made with the intent that the Plaintiff rely upon them in his decision to transfer from St. George's University Medical School to SMU. Plaintiff did rely upon those representations and those representations have now turned out to be false. The actions of the Board Defendants in changing the graduation requirements without any meaningful grace period constitutes an intentional misrepresentation of the graduation requirements that applied to Plaintiff and those similarly situated. Specifically, students who enrolled at such a time that despite making the required academic progress through the program, they were still in their clinical rotations or completed their clinical rotation at a point where they could not graduate until on or after August 15, 2010.

19.     Plaintiff faces the possibility that he cannot ever obtain a medical degree. He has completed everything that was necessary for graduation and now stands to be dismissed from the program. He may have no ability to reapply with any real expectation of being accepted. Most if not all medical schools ask applicants if they have ever been enrolled in medical school before. An answer of "yes" for being withdrawn or dismissed virtually eliminates an applicant from any consideration. Not only are the Defendants obligated to issue his diploma, but failing to do so they owe Plaintiff for the cost of obtaining his degree and the income he would have earned had he received just a diploma. The job for which Plaintiff is currently a candidate in Los Angeles, California will pay him an entry-level salary of $36,000. Had SMU not instituted the new graduation requirement Plaintiff would have graduated last April/May. During the 10-month period from when

11

he should have graduated up to the present, Plaintiff has declined employment offers because he could not provide proof he had graduated from medical school.

### IV. First Cause of Action: Breach of Contract Against SMU

Plaintiff incorporates paragraphs 1-19 as if fully set out herein below, and in addition would plead as follows:

20.     Plaintiff had a valid and existing contract with the Defendant SMU.  He completed all conditions precedent to the realization of the benefits of that contract, specifically all requirements fro graduation that were in place when he enrolled.  The actions of SMU whereby it arbitrarily and capriciously changed its graduation requirements less than twelve months before Plaintiff was to complete his education and then applied the changes to alter the requirements that existed when he enrolled constitutes a breach of the contract.

21.     As set out herein above, Plaintiff has been damaged by this breach. He does not have a diploma and is therefore precluded from seeking jobs that require a medical degree.  He has expended over $250,000 in tuition, fees and living expenses in order to obtain is M.D. His dismissal from SMU will result in Plaintiff being unable to every reapply with any reasonable hope of acceptance, even if he had the resources to repeat what was a four-year ordeal.  As such, Plaintiff is entitled to damages equal to what he would have earned had his diploma been issued consistent with the requirements that existed when he enrolled.  In addition and in the alternative he is entitled to specific performance of the contract and the granting of his diploma.

### V. Second Cause of Action: Intentional Misrepresentation by Defendant Board of Trustees

Plaintiff incorporates paragraphs 1-19 as if fully set out herein below, and in addition would plead as follows:

22. The Defendant Board is charged with making policy for the Defendant SMU. The Defendant Board established the graduation requirements that Plaintiff relied upon in transferring to SMU in the Spring of 2007. The Board intended that Plaintiff and others similarly situated would rely on the representations of graduation requirements. Changing those requirements in the manner in which it did and then applying them to the Plaintiff served to make the 2007 graduation requirements an intentional misrepresentation upon which the Plaintiff relied to his detriment.

23. Plaintiff has suffered damage as a direct and proximate result of the conduct of the Defendant Board. He has no diploma and cannot compete for jobs that require a diploma from a medical school. He is not only being deprived of current income, but because he will not be able to reapply with any hope of acceptance, he will lose future income. Without a diploma he has lost $250,000 in tuition, fees and living expenses for which he prays relief be granted.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and that upon trial on the merits that Plaintiff be awarded judgment as follows:

1. For specific performance of the contract resulting in the awarding of his diploma;

2. For monetary damages for loss of current employment opportunities occasioned by the failure to grant Plaintiff's diploma;

3. For monetary damages for loss of future employment resulting from the failure to obtain a diploma;

4.  For punitive damages against both SMU and the Board Defendants for the intentional nature of their conduct.

5.  For attorney's fees for breach of contract;

6.  For costs of court, pre and post judgment interest at the maximum rate allowed by law;

7.  For any and all other relief at law or in equity to which the Plaintiff shows himself entitled.

Respectfully Submitted

/S/ MARK A. WEITZ_____
Mark A. Weitz
SB# 21116500
SD Bar # 102493
Weitz Morgan PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
512-394-8950 (direct)
512-657-1849 (mobile)
512-852-4446 (facsimile)
ATTORNEY FOR PLAINTIFF
MARAJ KIDWAI

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2012, I served all of the Defendants in this case with a true and correct copy of the foregoing Plaintiff's First Amended Complaint by serving their attorney of record, Daryl Lapp of Edwards Wildman 111 Huntington Avenue, Boston, MA 02199-7613 by electronic service.

/S/ MARK A. WEITZ_____