UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARAJ KIDWAI,<br><br>                       Plaintiff,<br><br>v.<br><br>ST. MATTHEW'S UNIVERSITY SCHOOL OF MEDICINE, JOHN P. DOCHERTY, W. CHRISTOPHER CROLEY AND BARRY J. COOPER,<br><br>                    Defendants. | Civil Action No. 4:12-CV-00455<br><br><br>Hon. Lynn N. Hughes |

---

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, AND INCORPORATED MEMORANDUM OF LAW

Daryl J. Lapp
(Not admitted in the Southern District of Texas,
motion to appear pro hac vice pending)
dlapp@edwardswildman.com
*Attorney-in-charge for Defendants*

Joseph D. Rutkowski
(Not admitted in the Southern District of Texas,
motion to apear pro hac vice pending)
jrutkowski@edwardswildman.com

EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone:      (617) 239-0100
Facsimile:      (617) 227-4420

Sean Becker
State Bar No. 24049657
S.D. Tex. I.D. No. 602796
sbecker@velaw.com
VINSON & ELKINS LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:      (713) 758-2646
Facsimile:      (713) 615-5129

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   RELEVANT FACTS ................................................................................................ 2

III.  ARGUMENT ......................................................................................................... 5

      A.     Exercising Personal Jurisdiction Over SMU Would Violate the Minimum Contacts Requirement of the Due Process Clause. ....................................5

            1.     SMU lacks the "substantial, continuous, and systematic" contacts with Texas required for general jurisdiction. ................................ 6

            2.     Plaintiff's allegations against SMU do not arise out of SMU's limited contacts with Texas and thus cannot establish specific jurisdiction. ...................................................................................... 8

            3.     SMU's website does not constitute sufficient minimum contacts for personal jurisdiction. .......................................................... 11

      B.     Exercising Personal Jurisdiction Over the Trustees Would Violate the Minimum Contacts Requirement of the Due Process Clause. ..............................13

      C.     Exercising Personal Jurisdiction Over the Defendants Would Violate the Fair Play and Substantial Justice Requirement of the Due Process Clause. ..........15

IV.  CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Access Telecom, Inc. v. MCI Telecomms. Corp.,
    197 F.3d 694 (5th Cir. 1999) ...............................................................6, 7

Admiral Ins. Co., Inc. v. Briggs,
    CIV.A. No. 302CV0310P, 2002 WL 1461911 (N.D. Tex. July 2, 2002) ..............................14

All Star Enter., Inc. v. Buchanan,
    298 S.W.3d 404 (Tex. Ct. App. 2009) ....................................................................12

American Univ. Sys., Inc. v. American Univ.,
    Civ. A. No. 3:11-CV-282-L, 2012 WL 847035 (N.D. Tex. Mar. 13, 2012) ...................7, 8, 12

Asahi Metal Indus. Co. v. Superior Ct. of Cal.,
    480 U.S. 102 (1987)...............................................................16

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985).........................................................5, 9, 15

Burstein v. State Bar of Cal.,
    693 F.2d 511 (5th Cir. 1982) ...........................................................16, 17

Calder v. Jones,
    465 U.S. 783 (1984)...............................................................13

Dymatize Enters. v. Reflex Nutrition Ltd.,
    Civ. A. No. 3:07-CV-907-M, 2008 U.S. Dist. LEXIS 3711
    (N.D. Tex. Jan. 17, 2008)......................................................11, 13

Electrosource, Inc. v. Horizon Battery Techs., Ltd.,
    176 F.3d 867 (5th Cir. 1999) .............................................................9, 10

Epco Holdings, Inc. v. Enserca, LLC,
    CIV. A. No. H-10-0726, 2010 WL 2472204 (S.D. Tex. June 16, 2010)............................9, 13

Gardemal v. Westin Hotel Co.,
    186 F.3d 588 (5th Cir. 1999) ...............................................................7

Goodyear Dunlop Tires Operations, S.A. v. Brown,
    131 S. Ct. 2846 (U.S. 2011)...............................................................6

Helicopteros Nacionales De Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)...............................................................6

Holt Oil & Gas Corp. v. Harvey,
    801 F.2d 773 (5th Cir. 1986) ...........................................................................9, 10

Johnston v. Multidata Sys. Int'l Corp.,
    523 F.3d 602 (5th Cir. 2008) ........................................................................ passim

Khalil v. Chatham College,
    391 F. Supp. 2d 588 (S.D. Tex. 2005) ...............................................................9, 10

Klaxon Co. v. Stentor Elec. Mfg. Co.,
    313 U.S. 487 (1941)................................................................................................18

Kloth v. Southern Christian Univ.,
    494 F. Supp. 2d 273 (D. Del. 2007) aff'd, 320 F. App'x 113 (3d Cir. 2008).........12

Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG,
    612 F. Supp. 2d 813 (S.D. Tex. 2009) ..................................................................10

McFadin v. Gerber,
    587 F.3d 753 (5th Cir. 2009) ........................................................................8, 9, 15

Merlino v. Harrahs Entm't, Inc.,
    No. 05–CV–6660, 2006 WL 401847 (E.D. Penn. Feb. 17, 2006)..........................14

Mink v. AAAA Dev. LLC,
    190 F.3d 333 (5th Cir. 1999) ..........................................................................11, 13

Mobius Risk Group, LLC v. Global Clean Energy Holdings, Inc.,
    CIV.A. No. H-10-1708, 2012 WL 590926, at *4 (S.D. Tex. Feb. 22, 2012))........14

Moki Mac River Expeditions v. Drugg,
    221 S.W.3d 569 (Tex. 2007)....................................................................................9

Moncrief Oil Int'l Inc. v. OAO Gazprom,
    481 F.3d 309 (5th Cir. 2007) ..........................................................................5, 6, 8

OMI Holdings, Inc. v. Royal Ins. Co. of Can.,
    149 F.3d 1086 (10th Cir. 1998) .......................................................................17, 18

Optimal Beverage Co. v. United Brands Co.,
    Civ. A. No. H-06-1386, 2007 U.S. Dist. LEXIS 13274 (S.D. Tex. 2007) .............11

Polythane Sys., Inc. v. Marina Ventures Int'l, Inc.,
    993 F.2d 1201 (5th Cir. 1993) ...............................................................................10

Revell v. Lindov,
    317 F.3d 467 (5th Cir. 2002) ..........................................................................11, 12

Sawtelle v. Farrell,
    70 F.3d 1381 (1st Cir. 1995) .......................................................................17

Schlobohm v. Schapiro,
    784 S.W.2d 355 (Tex. 1990) .........................................................................6

Seiferth v. Helicopteros Atuneros, Inc.,
    472 F.3d 266 (5th Cir. 2006) ........................................................................8

State of Texas, ex rel. Allen Jones v. Janssen, L.P.,
    No. D-1-GV-04-001288, filed .......................................................................4

Stuart v. Spademan,
    772 F.2d 1185 (5th Cir. 1985) ...................................................................14

Submersible Sys., Inc. v. Perforadora Cent., S.A.,
    249 F.3d 413 (5th Cir. 2001) ........................................................................6

Ticketmaster-New York, Inc. v. Alioto,
    26 F.3d 201 (1st Cir. 1994) .......................................................................16

Vasquez v. Bridgestone/Firestone, Inc.,
    325 F.3d 665 (5th Cir. 2003) .....................................................................18

Waterman S.S. Corp. v. Ruiz,
    No. 01-10-00516-CV, 2011 Tex. App. LEXIS 6881
    (Tex. Ct. App. Aug. 25, 2011) ...................................................................11

Wilson v. Belin,
    20 F.3d 644 (5th Cir. 1994) .......................................................................15

World–Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980) ..............................................................................6, 16

Zippo Mfg. Co. v. Zippo Dot Com, Inc.,
    952 F. Supp. 1119 (W.D. Pa. 1997) ..........................................................11


OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(2) .......................................................................................1

Restatement (Second) of Conflict of Laws, § 145 (1971) ..............................18

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendants St. Matthew's University School of Medicine, John P. Dockerty, W. Christopher Croley, and Barry J. Cooper move the Court for an order dismissing Plaintiff's First Amended Complaint for lack of personal jurisdiction.   In support of their motion, Defendants submit the accompanying Affidavits of John Marvin, John P. Dockerty, W. Christopher Croley and Barry J. Cooper.

A proposed order is attached.

**I.      INTRODUCTION**

Plaintiff Maraj Kidwai was a student at Saint Matthew's University School of Medicine ("SMU"), which is located in the Cayman Islands.   Kidwai alleges that SMU breached its contract with him by changing its graduation requirements after his enrollment.   First Am. Compl., Count I.   Kidwai also has sued three present or former SMU trustees, John P. Dockerty, W. Christopher Croley and Barry J. Cooper, alleging that by virtue of approving the change in SMU's degree requirements, they intentionally misrepresented the degree requirements that were in effect when Kidwai first enrolled.   Id., Count II.

Plaintiff's First Amended Complaint alleges that the Court has personal jurisdiction over SMU and its trustees pursuant to the Texas long-arm statute.   Id. ¶¶ 2-5.   That is not the case. SMU has its principal place of business in the Cayman Islands and an administrative office in Florida.   SMU has no substantial, continuous and systematic contacts with the state of Texas. The relevant decisions to change SMU's graduation requirements were made by SMU in the Cayman Islands and Florida.   Kidwai's allegations do not arise out of or relate to any of SMU's contacts with Texas.   Even assuming SMU had jurisdictionally sufficient contacts with the State

of Texas (which is not the case), those contacts cannot be imputed to the trustees, none of whom has lived, worked or conducted business in Texas.

Because the Court lacks jurisdiction over SMU and the trustees, the First Amended Complaint should be dismissed.

## II.   RELEVANT FACTS

SMU is located in the Cayman Islands, which have granted it a charter to provide education in medicine leading to the degree of Doctor of Medicine.  Affidavit of John Marvin ¶ 2.  SMU's principal place of business, all of its educational facilities, and certain of its administrative offices are in the Cayman Islands.  Id. ¶ 3.  SMU also has administrative offices in Orlando, Florida.  Id. ¶ 4.

SMU is not incorporated in Texas, nor is it registered or licensed to do business there.  Id. ¶ 6.  SMU is not required to, and does not, file tax returns in Texas, nor does it make any other form of administrative report or filing with the State of Texas.  Id. ¶ 7.  SMU does not own, lease or otherwise occupy any property in Texas, nor does it have any offices, employees, telephone numbers or mailing addresses in Texas.  Id. ¶¶ 8-9.  SMU does not maintain any bank or other accounts in Texas.  Id. ¶ 10.  SMU does not have a registered agent for service of process in Texas.  Id. ¶ 11.  SMU does not engage in any advertising or recruiting efforts specific to Texas. Id. ¶ 12.

SMU's students, upon completion of their basic science education, perform clinical rotations at teaching hospitals in select foreign countries and throughout the United States, including Texas.  Id. ¶ 13.  These rotations may be core, for which SMU selects the hospital, or elective, for which the student selects the hospital.  Id.  SMU does not place, and for more than ten years has not placed, any students at hospitals in Texas for core clinical rotations.  Id. ¶ 14.

2

Over the past twelve years, on average, only four SMU students per year have participated in elective clinical rotations in Texas.  Id. ¶ 15.

SMU's only continuous contact with Texas is through Internet advertisements and its Internet website.  Id. ¶ 17.  SMU's Internet advertisements are not targeted to Texas.  Id. ¶ 18. SMU's website is accessible from anywhere in the world.  Id. ¶ 19.  While SMU's website allows prospective students to submit an application form, the website cannot process and respond to applications submitted via the online application form.  Id. ¶ 21.  SMU communicates with applicants and others only by telephone, letter or email, and not through its website.  Id.

Plaintiff Maraj Kidwai applied to SMU through its website on or about December 7, 2006.  Id. ¶ 20.  Kidwai is a Texas resident.  Am. Compl. ¶ 1.  Throughout Kidwai's application process, all communications from SMU to Kidwai originated in Florida or the Cayman Islands. Marvin Aff. ¶ 22.

In January of 2007, Kidwai enrolled as a transfer medical student at SMU.  Am. Compl. ¶ 8.  Kidwai accepted SMU's offer of enrollment by signing a Letter of Intent and Seat Deposit Form.  Marvin Aff. ¶ 23.  Neither this form nor any other document that could be deemed part of any contract between SMU and Kidwai contains any choice of Texas law or choice of Texas as a forum.  Id.

As a student at SMU, Kidwai attended classes at SMU's Cayman Islands campus until completing all of the classroom courses necessary to begin clinical rotations.  Am. Compl. ¶ 9. Following completion of his classroom courses, Kidwai completed clinical rotations at various medical facilities in the United States, including Florida Hospital in Orlando, Florida; AIME/Norwegian American Hospital in Chicago, Illinois; Northern Virginia Mental Health Institute; Florida Hospital in Kissimmee, Florida and the Broward County Medical Examiner's

Office in Fort Lauderdale, Florida.  Id.  Kidwai did not perform any clinical rotations in Texas. Id.; Marvin Aff. ¶ 16.

On or about May 6, 2010 SMU modified its graduation requirements for students graduating on or after August 15, 2010 to include passing the United States Medical Licensing Examination ("USMLE") Step 2 exams.  Am. Compl. ¶ 11.  SMU made and implemented this decision in the Cayman Islands and Florida.  Marvin Aff. ¶ 5.  Despite three attempts during 2010 and 2011, Kidwai has been unable to pass the USMLE Step 2 exams.  Am. Compl. ¶ 13.

Defendants, John P. Docherty, W. Christopher Croley and Barry J. Cooper are present or former members of SMU's Board of Trustees.  Id. ¶¶ 3-5.  Docherty currently resides in New York, where he has resided for the past twelve years.  Affidavit of John P. Docherty, ¶ 2.  Croley has resided in Florida for the past year, and resided in Illinois for the preceding thirteen years. Affidavit of W. Christopher Croley, ¶ 2.  Cooper currently resides in Oregon, where he has resided for the past twelve years.  Affidavit of Barry J. Cooper, ¶ 2.  None of the trustees has a residence in Texas, owns any property in Texas, maintains any mailing address in Texas, or maintains any bank or other accounts in Texas.  Docherty Aff. ¶¶ 3-5; Croley Aff. ¶¶ 3-5; Cooper Aff. ¶¶ 3-5.  None of the trustees has traveled to Texas on behalf of SMU or otherwise engaged in any business in Texas related to SMU.  Docherty Aff. ¶ 7; Croley Aff. ¶ 6; Cooper Aff. ¶ 6.

Kidwai alleges that Docherty "seems clearly involved in" the case State of Texas, ex rel. Allen Jones v. Janssen, L.P., No. D-1-GV-04-001288, filed in the 250th Judicial District Civil Court of Travis County, Texas, as if that "involvement" establishes jurisdiction over Docherty in Texas.  Am. Compl. ¶ 3.  Docherty is not a party to that case, nor has he consented to jurisdiction in Texas in that or any other case.  Docherty Aff. ¶ 6.

4

On February 16, 2012, Kidwai filed his original Complaint in this Court against SMU and the trustees.  Kidwai subsequently amended his Complaint on April 5, 2012.[1]

## III.   ARGUMENT

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident."  Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).  A "federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution."  Id.  "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis."  Id.  "Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"  Id.

### A.   Exercising Personal Jurisdiction Over SMU Would Violate the Minimum Contacts Requirement of the Due Process Clause.

Plaintiff's first hurdle in the federal due process analysis is the "minimum contacts" test, which requires proof that a "defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  "Minimum contacts" may give rise to either "specific personal jurisdiction" or "general personal jurisdiction."  Johnston, 523 F.3d at 609.  "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction."  Id. at 610 (quoting Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007)).

---

[1] In his amended complaint, Kidwai states that SMU and each of the trustees "agreed to answer [the complaint] in a timely manner.  This Court therefore has personal jurisdiction . . . ."  Am. Compl. ¶¶ 2-5.  This is inaccurate.  The Defendants never agreed to "answer" the complaint.  To the contrary, Defendants' counsel made clear from the outset of his discussions with Kidwai's counsel that Defendants' initial response to the Complaint would be in the form of a motion to dismiss for lack of personal jurisdiction.

Likewise, "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." Moncrief Oil Int'l, 481 F.3d at 311. "[A]n essential goal of the [minimum contacts] test is to protect the defendant." Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990) (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

> **1.      SMU lacks the "substantial, continuous, and systematic" contacts with Texas required for general jurisdiction.**

General personal jurisdiction "exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic." Johnston, 523 F.3d at 609 (citing Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414-19 (1984)). This "test is a difficult one to meet, requiring *extensive* contacts between a defendant and a forum." Id. (emphasis added) (quoting Submersible Sys., Inc. v. Perforadora Cent., S.A., 249 F.3d 413, 419 (5th Cir. 2001)); id. at 611 ("This circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues."); see also Helicopteros, 466 U.S. at 414-19 (no general jurisdiction despite defendant's purchasing 80% of its helicopter fleet and services from Texas; traveling to Texas to negotiate purchases; and training pilots in Texas); Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717–18 (5th Cir. 1999) (no general jurisdiction despite defendant's millions of dollars per month in revenues derived from Texas residents).

General jurisdiction requires that the defendant "have a business presence *in Texas*." Johnston, 523 F.3d at 611 ("It is not enough that a corporation do business *with* Texas . . . ."). The Supreme Court has held that "the paradigm forum for the exercise of general jurisdiction . . . for a corporation, . . . [is a place] in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (U.S. 2011).

The general jurisdiction test evaluates "in toto" the defendant's contacts "with the forum over a reasonable number of years, up to the date the suit was filed." Johnston, 523 F.3d at 610 (quoting Access Telecom, 197 F.3d at 717). While all the defendant's reasonably contemporary contacts must be considered, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Id. (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999)).

SMU lacks the kind of "substantial, continuous and systematic" contacts with Texas necessary to satisfy the "high standard" for exercising general personal jurisdiction. SMU is "fairly regarded as at home" in the Cayman Islands, where it has its principal place of business, or arguably in Florida where certain of its administrative offices are located. SMU does not own, lease or occupy any property in Texas, and it does not have any offices, employees, telephone numbers or mailing addresses in Texas. SMU is not incorporated in Texas, it does not file any taxes or administrative reports with Texas, it does not have a Texas registered agent for service of process, and it does not maintain any bank or other accounts in Texas.

SMU's limited contacts with Texas consist of untargeted Internet advertisements and correspondence with Texas resident students and applicants. These contacts fall well short of being "substantial, continuous and systematic." As the United States District Court for the Northern District of Texas recently stated regarding an "out-of-state educational institution" much like SMU, "courts have *unanimously* determined that [such an] institution is not subject to general personal jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university." American Univ. Sys., Inc. v. American Univ., Civ. A. No. 3:11-CV-282-L, 2012 WL 847035, at *6 (N.D. Tex. Mar. 13, 2012) (emphasis added). The Court in American University found no general jurisdiction over the

university in that case despite more extensive contacts than SMU has in this one: The university made over "$45 Million in . . . expenditures to over 800 businesses with Texas billing addresses," attended "approximately 200 events in Texas," "[e]mploy[ed] between 63 and 125 individuals with Texas mailing addresses," entered into "several contracts containing Texas forum selection clauses," sold "$12,530 in merchandise from its online stores to Texas residents," received "grants . . . to perform studies in Texas," and coordinated for students of Texas colleges to attend the university for a semester and pay the defendant "directly for housing, meal plans, health insurance, and other fees." Id. at *5-6. No such contacts are present in this case.

Nor do the few elective clinical rotations that SMU students choose to do in Texas constitute sufficient contacts. Those elective rotations are chosen by the students, not SMU. Such contacts initiated by third parties (the students) "cannot establish minimum contacts between the defendant and forum state." See Moncrief Oil Int'l, 481 F.3d at 311.

In sum, SMU at most does a small amount of business *with* Texas, but lacks "a business presence *in* Texas." Accordingly Plaintiff cannot meet his "difficult" burden to prove that SMU has the "substantial, continuous, and systematic" contacts with Texas required to exercise general jurisdiction.

> **2.    Plaintiff's allegations against SMU do not arise out of SMU's limited contacts with Texas and thus cannot establish specific jurisdiction.**

"A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009) (quoting Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266 (5th Cir. 2006)). To establish specific jurisdiction the plaintiff must show that the defendant "purposefully availed itself of the forum through its conduct so that it would reasonably

anticipate being haled into court there." Khalil v. Chatham College, 391 F. Supp. 2d 588, 593 (S.D. Tex. 2005) (citing Burger King, 471 U.S. at 475); see also McFadin, 587 F.3d at 759 ("the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court." (quotations omitted)).   "The purposeful availment requirement assures the defendant jurisdiction will not be exercised as a result of the 'merely fortuitous' fact that the plaintiff resides in the forum state." Khalil, 391 F. Supp. 2d at 593 (quoting Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 872 (5th Cir. 1999)).   Specific jurisdiction requires that an "out-of state defendant . . . has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 473 (citations omitted).   "A finding of specific jurisdiction . . . requires that the alleged injuries 'arise out of or relate to' the activities between resident and non-resident." Khalil, 391 F. Supp. at 593 (quoting Electrosource, 176 F.3d at 872).   In order for a claim to "arise out of or relate to" the defendant's forum contacts, "there must be a substantial connection between those contacts and the operative facts of the litigation." Epco Holdings, Inc. v. Enserca, LLC, CIV. A. No. H-10-0726, 2010 WL 2472204, at *3 (S.D. Tex. June 16, 2010) (quoting Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 585 (Tex. 2007)).

For a cause of action sounding in contract, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." Khalil, 391 F. Supp. 2d at 593 (quoting Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986)). Nor does the "exchange of communications between the two states during the course of negotiation and performance of the contract . . . , by itself, constitute purposeful contact with the forum for the purpose of personal jurisdiction." Id. (citing Holt Oil, 801 F.2d at 778); Moki Mac

River Expeditions, 221 S.W.3d at 586 ("Most courts have held that merely mailing letters and exchanging phone calls in recruitment efforts is insufficient to support specific jurisdiction over nonresidents for claims that arise outside the forum.").

The Fifth Circuit considers a number of factors to determine whether specific jurisdiction exists for a claim of breach of contract, specifically "whether the contract was performed in the forum state, whether the plaintiff's payment for the goods or services occurred in the forum state, and whether the choice of law provision in the contract applies the forum state's law." Khalil, 391 F. Supp. 2d at 594 (citing Polythane Sys., Inc. v. Marina Ventures Int'l, Inc., 993 F.2d 1201, 1205 (5th Cir. 1993) and Holt Oil, 801 F.2d at 778). "[W]here the material performance is not in the forum state, the Fifth Circuit has noted that payment matters even less in the determination." Id. (citing Holt Oil, 801 F.2d at 778).

The contract between Kidwai and SMU was to be performed in the Cayman Islands at SMU's campus, where all of SMU's educational facilities are located and where Kidwai attended all of his classes.  See Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG, 612 F. Supp. 2d 813, 822 (S.D. Tex. 2009) ("The place of performance is a 'weighty consideration.'") (citing Electrosource, 176 F.3d at 874).  No document that could be considered part of any contract between SMU and Kidwai contains any choice of Texas law or Texas as a forum. Finally, while Kidwai does not allege in his First Amended Complaint that his tuition payments to SMU originated in or occurred in Texas, even if they had, the fact that "material performance" of the agreement occurred in the Cayman Islands greatly diminishes this factor's weight.

For all of these reasons, SMU's limited contacts with Texas are insufficient to establish specific personal jurisdiction there.

3.      **SMU's website does not constitute sufficient minimum contacts for personal jurisdiction.**

When a defendant has forum contacts in the form of an Internet website, the Fifth Circuit analyzes the website on a "sliding scale." Revell v. Lindov, 317 F.3d 467, 470 (5th Cir. 2002) (observing that Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999), embraced the test set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). On one end of the spectrum are "passive" websites, which "merely allow[] the owner to post information on the [I]nternet" and are insufficient to establish personal jurisdiction. Id. On the other end are "sites whose owners engage in repeated online contacts with forum residents over the [I]nternet, and in these cases personal jurisdiction may be proper." Id. Websites in between, which "allow[] for bilateral information exchange with visitors," require courts to "examine the extent of the interactivity and nature of the forum contacts" to determine if jurisdiction is proper. Id.[2]

"Mink suggested that a website's capacity to process transactions internally is of controlling significance." Dymatize Enters., 2008 U.S. Dist. LEXIS 3711, at *17-18 ("Merely providing mail-in order forms or a toll-free order number on a website does not support jurisdiction."); see also Optimal Beverage Co. v. United Brands Co., Civ. A. No. H-06-1386, 2007 U.S. Dist. LEXIS 13274, at *8-11 (S.D. Tex. 2007) (finding insufficient minimum contacts despite a website with an interactive form to submit comments, and contact information including a toll-free number, fax number, address and email address). Accordingly, websites which are unable to "respond to customer inquiries through the website" are "passive" under the Mink analysis and do not establish jurisdiction. Waterman S.S. Corp. v. Ruiz, No. 01-10-00516-

---

[2] "Although Mink was a general jurisdiction case, Texas federal courts have interpreted it to apply in both general and specific jurisdiction analyses." Dymatize Enters. v. Reflex Nutrition Ltd., Civ. A. No. 3:07-CV-907-M, 2008 U.S. Dist. LEXIS 3711, at *8 (N.D. Tex. Jan. 17, 2008).

CV, 2011 Tex. App. LEXIS 6881 (Tex. Ct. App. Aug. 25, 2011); see also All Star Enter., Inc. v. Buchanan, 298 S.W.3d 404, 427 (Tex. Ct. App. 2009) (without evidence that defendant could respond directly "through the website," "the website is too 'passive' to . . . support general jurisdiction").   In Revell, for example, the Fifth Circuit found that the nonresident defendant university's website did not confer general personal jurisdiction despite allowing users to "subscribe to the Columbia Journalism Review, purchase advertising on the website or in the journal, and submit electronic applications for admission."   Revell, 317 F.3d at 469-71 (The "cited contacts . . . with Texas are not in any way 'substantial.'").

Similarly, in American University, the defendant university's website advertised and sold products directly to Texas residents, solicited prospective students and allowed them to submit applications online, solicited and provided for payment of donations, and provided information about recruiting and alumni events in Texas.   American Univ. Sys., 2012 WL 847035, at *7. Despite these contacts, the United States District Court for the Northern District of Texas found that "[n]one of this internet activity . . . rises to a level sufficient to justify the exercise of general jurisdiction" where the nonresident defendant was a "traditional 'brick and mortar' university with a physical campus."   Id.; see also Kloth v. Southern Christian Univ., 494 F. Supp. 2d 273, 281 (D. Del. 2007) aff'd, 320 F. App'x 113 (3d Cir. 2008) (finding no personal jurisdiction over a nonresident university with a website providing general information and allowing users to submit applications online).

Like the websites maintained by the defendants in American University and Revell, SMU's website is insufficient to establish personal jurisdiction.  SMU's website is accessible to anyone, regardless of their location.  It provides online users with information about SMU's educational offerings, and allows users to submit an application online.   SMU's website,

however, cannot process or respond to applications submitted via the online application form. After an application is submitted online, SMU must process the application and communicate with the applicant via telephone, letter, or email, but none of that is accomplished through SMU's website.  The inability of the website to "process [applications] internally is of controlling significance" and renders it "passive" under the <u>Mink</u> analysis.  <u>See</u> <u>Dymatize Enters.</u>, 2008 U.S. Dist. LEXIS 3711, at *17-18.

As a result, the limited contacts with Texas created by SMU's website are insufficient to establish general or specific personal jurisdiction over SMU.

### B.    Exercising Personal Jurisdiction Over the Trustees Would Violate the Minimum Contacts Requirement of the Due Process Clause.

When assessing personal jurisdiction in a case involving multiple defendants, "[e]ach defendant's contacts must be assessed individually."  <u>Epco Holdings</u>, 2010 WL 2472204, at *3 (quoting <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984)).  Kidwai accordingly has the burden of establishing general or specific jurisdiction as to each of the trustees individually.

The trustees do not reside in Texas, but rather have resided in other states for at least the past twelve years.  None of the them has a residence in Texas, owns any property in Texas, maintains any mailing address in Texas, or maintains any bank or other accounts in Texas.  None of them has traveled to Texas on behalf of SMU or otherwise engaged in any business in Texas related to SMU.

Kidwai alleges that Docherty "seems clearly involved in" a case between the State of Texas and Janssen, L.P. in the 250th Judicial District Civil Court of Travis County, Texas. However, Docherty is not a party to that case, nor has he consented to jurisdiction in Texas in that or any other case.  Such limited involvement with an unrelated Texas lawsuit falls well below the "substantial, continuous, and systematic" contacts required to support general

13

jurisdiction. See Merlino v. Harrahs Entm't, Inc., No. 05–CV–6660, 2006 WL 401847, at *3 (E.D. Penn. Feb. 17, 2006) ("Filing even nineteen lawsuits, without more, cannot constitute continuous and systematic activity so as to establish general jurisdiction.") (favorably cited by Mobius Risk Group, LLC v. Global Clean Energy Holdings, Inc., CIV.A. No. H-10-1708, 2012 WL 590926, at *4 (S.D. Tex. Feb. 22, 2012)).  Moreover, the unrelated Texas lawsuit obviously cannot be a basis for specific jurisdiction because the claims in this case do not "arise out of or relate to" that one.

Nor are SMU's limited contacts with Texas imputed to the trustees for purposes of establishing personal jurisdiction.  The fiduciary shield doctrine "holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual [even where, unlike this case,] the state has in personam jurisdiction over the corporation." Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985).

"[C]ourts have recognized an exception to the fiduciary shield rule" in just two limited circumstances: "when the corporation is the alter ego of the individual or when the individual officer perpetuates a fraud." Admiral Ins. Co., Inc. v. Briggs, CIV.A. No. 302CV0310P, 2002 WL 1461911, at *5 (N.D. Tex. July 2, 2002).  Neither exception applies here.

With respect to the first exception, a plaintiff may overcome the presumption that a corporation is not an individual's alter ego if "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham." Stuart, 772 F.2d at 1197.  Kidwai makes no such allegation, nor would he have any basis for doing so.

14

The second exception, which can apply where an individual corporate officer perpetuates a fraud, also is inapplicable here.   Kidwai alleges that by approving the 2010 change in SMU's graduation requirements, the trustees served to make SMU's statement of its graduation requirements in 2007, when Kidwai enrolled, "an intentional misrepresentation."  Am. Compl. ¶ 22.   It is self-evident that an action taken in 2010 could not constitute an intentional misrepresentation or fraud in 2007.

### C.   Exercising Personal Jurisdiction Over the Defendants Would Violate the Fair Play and Substantial Justice Requirement of the Due Process Clause.

Even assuming, *arguendo*, that the first prong of the due process analysis were satisfied for either general or specific jurisdiction, it would be unreasonable for this Court to exercise personal jurisdiction over SMU or the trustees.  In addition to proving that the defendant has sufficient "minimum contacts," due process requires the plaintiff to prove "that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"  Johnston, 523 F.3d at 609 (quoting Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994)).   "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities."  Burger King, 471 U.S. at 477-78.

In determining whether the assertion of jurisdiction would offend "traditional notions of fair play and substantial justice, the court must examine "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."  McFadin, 587 F.3d at 759.   Additionally, when dealing with foreign defendants, the Supreme court has observed that the interests of the federal government and foreign nations are "best served by a

careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." <u>Asahi Metal Indus. Co. v. Superior Ct. of Cal.</u>, 480 U.S. 102, 115 (1987).

The first reasonableness factor – the burden on the nonresident defendant – weighs against a finding of reasonableness. The Supreme Court has stated that this element is "always a primary concern." <u>World–Wide Volkswagen</u>, 444 U.S. at 292. "[M]ost of the cases that have been dismissed on grounds of unreasonableness are cases in which the defendant's center of gravity, be it place of residence or place of business, was located at an appreciable distance from the forum. <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 210 (1st Cir. 1994) (collecting cases). This burden is exacerbated when a foreign defendant, like Cayman Islands-based SMU, "would not have compulsory access to many of the witnesses and evidence necessary to defend itself," by virtue of its location in a foreign country. <u>Johnston</u>, 523 F.3d at 617; <u>Burstein v. State Bar of Cal.</u>, 693 F.2d 511, 522 (5th Cir. 1982) (finding jurisdiction unreasonable where "[t]he cause of action . . . is essentially unrelated to the [defendant's] contacts with [the forum state and] . . . any witnesses likely to be called, other than [the plaintiff], are located outside of [the forum state]"). In this case, litigation in Texas would impose a much greater burden on the Cayman Islands-based SMU than litigation in the alternative forum of Florida, where SMU has some of its administrative offices. SMU's Cayman Islands campus is hundreds of miles closer to Orlando, Florida than it is to Houston, Texas. Litigation in Texas also imposes a substantial burden on the individual trustees who reside in New York, Florida and Oregon.

The second factor – the forum state's interest – also weighs against a finding of reasonableness. When assessing the forum state's interests, the Fifth Circuit considers the extent

of those interests in the state.  See Burstein, 693 F.2d at 522.  When the "acts comprising the defendants' alleged [wrongdoing] occurred almost entirely outside of" the forum state, that state has a "far less compelling interest."  Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995).  In this case, the events related to the change in SMU's degree requirements all occurred in the Cayman Islands or Florida.  As a result, Texas has a "far less compelling interest" in exercising personal jurisdiction over this case than would a more appropriate forum like Florida.

The third factor – the plaintiff's interest – does not weigh significantly in favor of jurisdiction in Texas.  This factor "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."  OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1097 (10th Cir. 1998) (remanding for dismissal for lack of personal jurisdiction despite sufficient minimum contacts).  Kidwai has not alleged, and could not establish, that litigation in Florida or the Cayman Islands would expose Kidwai to an increased burden that is "so overwhelming as to practically foreclose pursuit of the lawsuit."

The fourth factor – the interests of the interstate judicial system – weighs against finding personal jurisdiction proper in Texas.  Federal courts consider a number of factors under this prong, including "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."  Id. (citations omitted).  In this case, with the exception of the Plaintiff, all the parties and witnesses are located outside of Texas.  The trustees reside in Florida, Oregon and New York.  SMU's personnel who were involved in the decision to change SMU's graduation requirements are located in Florida and the Cayman Islands.  Accordingly, the alleged "wrong

17

underlying the lawsuit," SMU's change in its graduation requirements, occurred in Florida and/or the Cayman Islands, where the decision was made and implemented.  Whichever forum's substantive law governs this case, it is unlikely to be that of Texas.[3]  Finally, the exercise of personal jurisdiction in Texas is not "necessary to prevent piecemeal litigation" because the Defendants have all agreed to submit to personal jurisdiction over this matter in Florida.

The fifth factor – the shared interest of the several states in furthering fundamental social policies – is neutral.  Federal courts consider a number of factors under this prong, including: "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident."  Id. at 1098 (citations omitted).  In this case, SMU has its principal place of business in the Cayman Islands, and the Cayman Islands have granted it a charter to provide education in medicine leading to the degree of Doctor of Medicine.  While SMU chose to conduct business with forum resident Kidwai, this relationship was centered in SMU's educational facilities in the Cayman Islands.

In sum, considering all five factors, it would not be reasonable to assert personal jurisdiction over SMU and the trustees in Texas.

---

[3] Generally, "[a] federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits." Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 674 (5th Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Texas' "most significant relationship" test determines which forum's laws apply. Id.  The most significant relationship test "considers various contacts: the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered."  Id. (citing Restatement (Second) of Conflict of Laws, § 145 (1971)).  Other than Kidwai's place of residence, which is offset by that of SMU and the trustees, all of these factors indicate that the laws of the Cayman Islands or Florida are more appropriate than those of Texas.

18

**IV.     CONCLUSION**

The Defendants' Motion to Dismiss should be allowed.

<div style="margin-left: 45%;">

Respectfully submitted,

/s Sean M. Becker

    Daryl J. Lapp
    (Not admitted in the Southern District of
    Texas, motion to appear pro hac vice
    pending)
    dlapp@edwardswildman.com
    EDWARDS WILDMAN PALMER LLP
    111 Huntington Avenue
    Boston, Massachusetts 02199
    Telephone:     (617) 239-0100
    Facsimile:     (617) 227-4420
    *Attorney-in-charge for Defendants*

    Joseph D. Rutkowski
    (Not admitted in the Southern District of
    Texas, motion to appear pro hac vice
    pending)
    jrutkowski@edwardswildman.com
    EDWARDS WILDMAN PALMER LLP
    111 Huntington Avenue
    Boston, Massachusetts 02199
    Telephone:     (617) 239-0100
    Facsimile:     (617) 227-4420

    Sean Becker
    State Bar No. 24049657
    S.D. Tex. I.D. No. 602796
    sbecker@velaw.com
    VINSON & ELKINS LLP
    First City Tower
    1001 Fannin Street, Suite 2500
    Houston, Texas 77002-6760
    Telephone:     (713) 758-2646
    Facsimile:     (713) 615-5129

    ***Attorneys for Defendants St. Matthew's
University School of Medicine, John P.
Docherty, W. Christopher Croley and Barry J.
Cooper***

</div>

19

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing document and the incorporated memorandum of law were served on counsel for Plaintiff by the Court's ECF system on May 2, 2012.

Mark A. Weitz
Weitz Morgan PLLC
100 Congress Avenue, Suite 2000
Austin, TX 78701
Fax: 512.852.4446

/s Sean M. Becker_____
Attorney for Defendants