UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARAJ KIDWAI §<br>§<br>Plaintiff, §<br>§<br>V. §<br>§<br>ST. MATTHEW'S UNIVERSITY §<br>SCHOOL OF MEDICINE, JOHN §<br>P. DOCHERTY, W. CHRISTOPHER §<br>CROLEY and BARRY J. COOPER §<br>Defendants. § | Civil Action No.: 4:12-cv-00455 |

## AFFIDAVIT OF MARAJ KIDWAI

1.   I am the Plaintiff in the above styled and numbered cause. I have personal knowledge of the facts set out herein and they are true and correct

2.   I am a Texas resident and have been a Texas resident continuously since May 1986.

3.   I attended St. George's University from August 2005 through May 2006.

4.   From June 2006 until January 2007, I was physically living in my home in Houston, Texas. It was during this period that time I decided to look into transferring. In November/December of 2006 I made the decision to do so. At the time I viewed and submitted my application, I was still in Houston at that point.

5.   I started school at SMU in January 2007. I was at the Cayman Island campus until December 2007 except for two breaks when I returned to my home in Houston. I was in Houston in April and May 2007 and again in August and September 2007.

6.   I completed my classroom curriculum in April 2008. I actually completed all my classroom education in the Cayman Islands by December 2007. However, I had to complete another semester (called 5th Semester) in either the Cayman Islands or Miami. I chose Miami, and I returned to Houston then to prepare for the USMLE STEP 1 Licensing Exam (remained in Houston from April 2008 until July 2009 where I took the exam). I was given until May/June 2009 to pass the USMLE STEP 1 exam, which I was able to do. Subsequently, my clinical rotations began in July 2009. My clinical rotations were completed in April 2011. SMU's educational facilities are split between the basic sciences in the Cayman Islands (consists of under 50% of total education) and clinical sciences/rotations in select hospitals within the U.S., U.K., and Canada (consists of over 50% of education)

1

7. SMU's sole means to contact students for purposes of applying is by way of its internet site. The internet site is an active, not a passive site and allows the student to complete the application process online and to interact with the school, transmitting information to me personally and allowing me and other students to respond. Once accepted, and I was accepted almost immediately, I received an online account called "SMU On-Line," through which I corresponded online via email, made payments, and in effect interacted with the school as almost my exclusive means of communication. The entire solicitation/application process took place while I was in Houston, Texas, including the signing of my letter intent and initial deposit.

8. Over the course of my educational experience with SMU I spent only one year in the Cayman Islands and have not returned there since completing my classroom studies in December 2007. Most of my payments were made from Houston, Texas and the bank accounts I maintained in Texas. Virtually all of my correspondence with SMU occurred over my SMU On-Line account, including all of my financial dealings with SMU.

9. Each year SMU issued a new catalog and that catalog was available online. Every year the catalog was released I was in Houston Texas, continued to be a Texas resident and reviewed the catalog for any changes. The 2006-2007, 2007-2008, 2008-2009, 2009-2010 catalog showed the graduation requirements as unchanged from when I was admitted in December 2006.

10. Once I began my clinical rotations transferring to another medical school was no longer an option. It had become economically infeasible since the school had already collected over 85% of my total tuition and I had completed more than 75% of my medical education at that point (May 2010), and every school I contacted would not take students beyond the basic sciences. Had I had any inclination that the graduation requirements were going to change prior to my graduating and that the change would apply to me, I would have transferred schools after basic sciences.

11. I was informed of the new graduation policy requirements in May 2010. I was told I would have to pass the USMLE STEP 2 CS Exam and the USMLE STEP 2 CK Exam. Already strained with paying for all of my tuition and family's living expenses out of pocket (because of the school's loss of financial aid), I was burdened with thousands of more dollars of costs in paying for these exams. Additionally, I had to pay for all my preparation for these exams. Whereas for STEP 1, the SMU offered/mandated a Kaplan review course during 5th semester, we were offered no preparation for the USMLE STEP 2 Exams. Ultimately, I passed my STEP 2 CS Exam, but failed to pass the STEP 2 CK Exam. Though I obviously did not agree with the new school policy (offering my opposition in the university's end of semester surveys as well as in personal emails to Chancellor Marvin), I saw no harm in trying to pass the exams. I just wanted my degree, and I figured taking these exams was the most hassle-free approach to reaching that goal. Additionally, passing these exams could be potentially helpful in future job prospects. I did not agree with the school's strict, abrupt policy change, however, that mandated passing the exam or else being expelled without a degree.

12. I wasn't sure exactly what career path I would take, but I was leaning towards teaching and/or research. The school by its own admission realizes that there are many career opportunities outside of residency training. Kristan Caisse, Alumni Coordinator, demonstrates

2

this when she emails students about what career field they have chosen. She lists many choices, including residency, teaching, research, continuing education (phD, etc.), other hospital related jobs like healthcare administration/management, or practicing in a foreign country.

13. By the time the policy changed I could no longer transfer to another school and I had paid over $90,000 in tuition and fees with only one payment remaining. I had completed 40 weeks of clinical rotations prior to the policy change in May 2010, and I had 36 weeks of rotations left. I took eleven months to complete the remaining 36 weeks of clinical rotations, ultimately completing all my clinical rotations and medical training on April 9, 2011. When the graduation requirement change occurred, the only class not affected was the immediate graduating class of summer 2010. And although I completed my entire curriculum within SMU's designated schedule, I could not have graduated in May 2010.

14. The way the new graduation requirement was implemented a student either passes his/her Step 2 Exams in three tries or the student is dropped from the medical school. Thus after 5 years, $250,000 in tuition, fees, and living costs, I not only do not have my medical degree, but have virtually no chance to ever reapply and earn my medical degree. Established, reputable Caribbean universities that offer financial aid like American University of the Caribbean offers a 'grandfather' clause to its students as detailed on its website (i.e. any student that matriculated before May 2006 would not be required to pass the USMLE Step 2 Exams, those that matriculated after that date would be required to pass the Exams). This would have been a simple and reasonable approach for SMU to take that would have allowed them to implement new policy without harming students like myself in the process. This was the key point I conveyed to Chancellor Marvin during my communication with him, but it failed to make any impact on him or SMU's decision.

15. When I enrolled my class had 90 students. Of that number at least ten, not including myself were from Texas and I have included many of those person's names in my initial disclosures. The SMU web-site specifically lists Texas resident alumni as well as teachers recruited from Texas. In addition, SMU faculty travels to Texas, as recently as 2010 on business specifically related to SMU and that information is also a part of its web-site.

16. SMU has only been in existence since 1997. For twelve of the last fifteen years of its existence it has consistently maintained clinical rotations at Southwestern Medical School in Dallas, Texas and other hospitals within the state. And based on John Marvin's affidavit every year in the past twelve years an average of four students per year have come to Texas to complete their SMU education through clinical rotations.

17. John Marvin's affidavit seems to suggest there is some distinction between core rotations and elective rotations. Functionally that is simply not true. If I had passed my core rotations but not passed my elective rotations I would have failed the SMU curriculum. My responsibilities to SMU and the hospitals where rotations were conducted were the same for both core and elective rotations.

18. While I could choose a hospital for my elective rotations, my choice was nevertheless subject to approval by SMU and neither I nor any other student could do elective rotations at any

3

hospital that SMU did not approve and which SMU did not have a relationship. Similarly, I was able to choose my core rotations from a pool of sites. In either case (elective vs. core rotations), an application and related paperwork had to be submitted and approved. That clinical site, such as Southwestern University in Dallas, TX and the Attending Physician become a permanent part of the student's record as documented on his/her school transcript.

19.     While engaged in clinical rotations, each student is instructed that his or her conduct can expose themselves and SMU to liability for negligence and/or intentional conduct, whether from a patient or a member of the host hospital staff. At SMU, medical students are required to pay $200.00 per clinical rotation semester for medical malpractice insurance. In addition, the school and the clinical rotation facility have contractual duties to one another that could give rise to suit. I do not have access to SMU's clinical contracts and documents, they have yet to be exchanged in this case. However, attached is a true and correct copy of a generic clinical rotations contract between a medical school and a medical facility. The contract creates any number of duties on the part of the medical school, the breach of which would expose the school to legal action.

> I declare under penalty of perjury that the foregoing is true and correct. Executed on May 21, 2012.
>
> _/s/ Maraj Kidwai_
> Maraj Kidwai