# CLINICAL ROTATION AGREEMENT
## BETWEEN
## (EDUCATIONAL INSTITUTION), EMERGENCY MEDICAL TECHNICIAN PROGRAM
## AND
## (HOSPITAL NAME)

THIS AGREEMENT is made and entered into as of [Date] between [Educational Institution] (the "Educational Institution"), and [Hospital Name] (the "Facility"). Agencies included in this Agreement are: **Emergency Medical Technician Program**.

       1.    <u>Clinical Rotations</u>. The educational Institution shall arrange clinical rotation experience ("Clinical Rotations") for students ("Students") at the Facility. The Educational Institution and the Facility shall mutually determine the scope of the Clinical Rotation programs, the schedule of student assignments and the number of Students who may participate in the Clinical Rotations. The clinical programs that are covered under this contract include: **Emergency Medical Technician Program**.

       2.    <u>Term</u>. The term of this Agreement shall be for a period of one (l) year, commencing [Date] and ending [Date], unless terminated earlier as provided in this Agreement. Thereafter, this Agreement shall be automatically renewed for a period of three (3) years. Either party upon 90 days prior written notice may terminate this contract. Termination of this Agreement shall not affect the completion of students currently enrolled and participating in clinical rotations.

       3.    <u>Responsibilities of the Educational Institution</u>.

       a.    The Educational Institution shall provide the Facility with the clinical learning experience program and objectives and plan the schedules and assignment in cooperation with the Facility liaison. This shall include the number of students assigned to a clinical area.

       b.    The Educational Institution shall provide a sufficient number of qualified faculty members for teaching and supervision of the students. In the event the faculty member is off-site, he or she shall be available by phone to the student and the Facility liaison. For purposes of the agreement, the term faculty shall be used to indicate clinical instructors, clinical supervisors, and faculty employed by the Educational Institution.

       c.    The Educational Institution shall designate an Educational Institution employee or another individual retained by the Educational Institution (the "Faculty") to serve as the coordinator for the Clinical Rotations to work directly with Facility personnel and coordinate all the activities of Students.

       d.    The Educational Institution shall provide a roster of the names of the Faculty and Students (the "Roster"), along with a rotation schedule, to [Name,

Position] at the Facility before the Clinical Rotations begin.  The Educational Institution and Facility will mutually agree upon the number of students and dates for each clinical rotation.

        e.      The Educational Institution will require all students and faculty to abide by the rules, regulations, policies and procedures and standards of conduct, including religious, ethical and professional standards of the Facility and conduct themselves in a professional manner.  All students and faculty shall wear an appropriate uniform or attire and display proper identification at all times while on Facility premises.

        f.      For each Faculty and Students who will participate in the Clinical Rotations, the Educational Institution shall provide upon request to the Facility verification of the following immunizations and tests as per DCD guidelines:  (i) a complete Hepatitis B vaccination series (series of three or waiver); (ii) annual TB screening; (iii) MMR vaccination(s) or positive titer(s); (iv) varicella vaccination or a varicella titer.

        g.      The Educational Institution shall require that each Student and Faculty before beginning the Clinical Rotations have current BLS provider certification that meets standards acceptable to the Facility.

        h.      The Educational Institution will assign for clinical training only those students who:

                L.      have successfully met proper pre-clinical learning experiences
                2.      have completed training in universal precautions and infection control, fire safety, and disaster safety
                3.      have received education on protected health information and the Privacy Rule under HIPPA

        i.      The Educational Institution shall require Students to have transportation to and from the facility, to arrive and depart promptly, and to park in areas designated by the Facility.

        j.      The Educational Institution shall be responsible for all actions, activities and affairs of Students, and the Faculty during the Clinical Rotations to the extent required by law.

        k.      The Educational Institution shall be responsible for planning and implementing the educational program, including administration, programming, curriculum content, books and materials, faculty appointments, eligibility and admission criteria, Student selection, matriculation, promotion, graduation, Student performance evaluation, Faculty performance evaluation, references and all academic aspects of the Clinical Rotation programs.

l.      The Educational Institution will ensure that the faculty member has a valid and unrestricted license from the appropriate discipline licensing body and experience in the clinical area.  The Educational Institution shall ensure that the faculty member has completed training in universal precautions, infection control, fire and disaster safety and have received education on protected health information and the privacy rule under HIPAA.  The Educational Institution will provide this documentation to the facility upon request.

m.      The Educational Institution assures that all students and faculty are covered by health, general liability and professional liability insurance in the amount of at least $1 million per occurrence and $3 million in the aggregate.

n.      The Educational Institution will assure that Faculty is responsible for making arrangements for and/or attending Facility orientation.

4.      <u>Responsibilities of the Facility</u>.

a.      The Facility, when possible, will provide clinical experience situations as prescribed by the Educational Institution's objectives.  The Educational Institution at the beginning of the clinical rotation will provide these objectives to the Facility.

b.      The Facility shall retain the sole discretion to remove from and deny access to its facility to any student or faculty member.  Such action shall be reported to the Educational Institution's program director.

c.      The Facility shall designate a Facility employee to serve as its coordinator (the "Facility Coordinator") for the Clinical Rotations and to work directly with the Educational Institution to plan and coordinate the Clinical Rotations.

e.      The Facility shall provide an orientation to the Faculty prior to the start of clinical that includes a tour of the Facility and addresses any facilities or procedures of a particular Facility department pertinent to the Clinical Rotations.

f.      The Facility shall permit Students and Faculty to assist in the provision of direct patient care services to Facility patients, but the Facility may restrict their activities, including any patient carte activities, at the Facility.  The Facility retains the sole responsibility for patient treatment at all times.

g.      The Facility shall permit the Educational Institution and its accreditation agencies to visit, tour and inspect the Facility's Facilities and records relating to the Clinical Rotations on reasonable notice during the Facility administration's regular business hours, subject to requirements of patient confidentiality, legal compliance requirements of the Facility, and minimizing disruption or interference with Facility operations, including patient care activities.

h.      The Facility shall make its classrooms, conference rooms and library facilities available to the Educational Institution for the Clinical Rotations, without charge, subject to availability and Facility policies regarding use of its facilities.

i.      The Facility shall make available emergency care and treatment to Students and Faculty, as necessary, subject to its usual charges.  Persons receiving care are responsible for payment of the care.

j.      The Facility will inform the Educational Institution of any changes in its operation, policies, personnel, or service delivery, which will affect the clinical rotation or the number of students.

k.      The Facility agrees that at all times, during this Agreement, it shall have appropriate licensure to do business as a health care agency, that it complies with all appropriate State and local laws, regulations, and other similar requirements.

5.      Conflicts and Removal of Students or Faculty.  If a conflict arises between an employee of the Facility, on the one hand, and a Faculty or Student, on the other hand, the Faculty and Facility coordinator shall intervene in an attempt to resolve the matter.  In addition, upon receipt of the Roster or at any time after a clinical Rotation begins, the Facility may refuse to allow any Student or Faculty to participate in the Clinical Rotation if the individual has an unfavorable record with the Facility from previous employment, another clinical rotation or any other reason.

6.      Representations and Warranties of the Educational Institution.  The Educational Institution represents and warrants to, and covenants with, the Facility as follows:

a.      Students are required to wear picture identification badges issued. Students must comply with the policies and procedures of the Educational Institution and the Facility regarding dress codes.

b.      A Student may perform duties and procedures for which he or she has been prepared academically under appropriate supervision, but not any others.

c.      The Educational Institution shall continuously monitor and evaluate the competence and performance of each Student and shall remove from a Clinical Rotation any Student who is not competent or qualified to participate in the Clinical rotation.

d.      The Faculty is duly licensed to practice in their profession in Maryland; the license of each Faculty is unrestricted; and each Faculty will maintain his or her license current, in good standing and unrestricted during the entire term of this Agreement.

e.      The Faculty is experienced, qualified and currently competent to provide the services that are required of them for the Clinical Rotations and any services required of them under this Agreement.

f.      The Educational Institution has provided the Faculty and Students with Training on the Facility's policies and procedures with respect to protected health information that is necessary and appropriate for them to carry out the activities contemplated by this Agreement as required by applicable provisions of the Health Information Portability and Accountability Act of l966 and regulations.

g.      All information that has been furnished to the Facility concerning the Educational Institution, Students and Faculty is true and correct in all respects.

h.      All representations and warranties in this Agreement shall remain true and correct during the term of this Agreement.  If any of the representations and warranties becomes inaccurate in any way, the Educational Institution shall immediately notify the Facility.

7.      <u>Employees of the Educational Institution</u>.  Other than any Facility employee designated as a Faculty as permitted in this Agreement, the Educational Institution, and not the Facility, is the employer of the Faculty.  The Educational Institution shall be responsible for (a) the compensation and benefits payable and made available to the Faculty and (b) withholding any applicable Federal and state taxes and other payroll deductions as required by law.

8.      <u>Insurance Coverage</u>.

a.      <u>State Institution</u>:  The Educational Institution shall indemnify and hold the Facility harmless from any claims, demands, injuries, losses or damages caused by any wrongful conduct on the part of the Educational Institution, its faculty, students, employees or servants committed during the term of this Agreement.  It is understood and agreed that the Educational Institution's obligation in this regard shall be expressly limited to the limits of its liability imposed by the provisions of the Courts and Judicial Proceedings Article, Section 5-519, of the Annotated Code of Maryland, as amended.  It is further understood and agreed that the Educational Institution, by the terms of this Agreement, is not waiving or relinquishing in any manner any defenses that may be available to the Educational Institution, whether to governmental or sovereign immunity or otherwise, nor in the Educational Institution relinquishing any defenses that may become available to it at any time during the Agreement, but it is further understood that the Educational Institution is free to assert all defenses that may be available to it as a governmental or State agency or such defenses that become available to them by operation of law.  In addition, the Educational Institution accepts responsibility for damage to the Facility property caused by the wrongful conduct of the Educational Institution, its faculty, students, employees or servants up to and limited by the liability of the Educational Institution under Section 5-519 of the State Code.

   b.     The Educational Institution shall secure and maintain insurance policies covering the following types of liability in the following minimum amounts:  1. one million dollars ($1,000,000.00) per occurrence and three million dollars ($3,000,000.00) in the aggregate arising out of the neglect of its students or faculty in connection with this Agreement.  2.  Workmen's Compensation insurance in amounts as required by applicable state law.  The Educational Institution shall provide to the Facility a certificate of insurance evidencing the insurance coverage upon execution of the Agreement and shall provide current certificates upon request prior to a student's start date with the Facility.

   9.     <u>Indemnification</u>.

   a.     <u>NON-state Institutions</u>:  The Educational Institution shall indemnify and hold the Facility harmless from any claims, demands, injuries, losses or damages caused by any wrongful conduct on the part of the Educational Institution, its faculty, students, employees or servants committed during the term of this Agreement.  It is further understood and agreed that the Educational Institution, by the terms of this Agreement, is not waiving or relinquishing in any manner any defenses that may be available to the Educational Institution.  In addition, the Educational Institution accepts responsibility for damage to the Facility property caused by the wrongful conduct of the Educational Institutional, its faculty, students, employees or servants.

   b.     The Educational Institution shall secure and maintain insurance policies covering the following types of liability in the following minimum amounts:  one million dollars ($1,000,000.00) per occurrence and three million dollars ($3,000,000.00) in the aggregate arising out of the neglect of its students or faculty in connection of this Agreement.  2.  Workmen's compensation insurance in amounts required by applicable state law.  The Educational Institution shall provide to the Facility a certificate of insurance evidencing the insurance coverage upon execution of the Agreement and shall provide current certificates upon request prior to a student's start date with the Facility.

   c.     The Facility agrees to indemnify and hold harmless the Educational Institution, its trustees, officers, agents, and employees from and against any losses, claims, damages, liability, expenses, and costs, including attorney's fees, resulting from any act of negligence by the Facility or its agents or employees.

   d.     <u>Responsibility for Actions</u>.  Each party shall be responsible for its own acts and omission and the acts and omissions of its employees, officers, directors and affiliates.  A party shall not be liable for any claims, demands, actions, costs, expenses and liabilities, including reasonable attorneys' fees, which may arise in connection with the failure of the other party or its employees, officers, directors, or agents to perform any of their obligations under this Agreement.

10.     <u>Termination</u>.

    a.     <u>Termination for Cause</u>.  The Facility may immediately terminate this Agreement for cause upon notice to the Educational Institution upon the occurrence of any of the following events:  (i)  the failure of the Educational Institution to maintain insurance coverage as required by this Agreement; or (ii) the Educational Institution fails to bar a Student from participating in a Clinical Rotation after the Facility has informed the Educational Institution to remove a Student for reasons permitted under this Agreement.

    b.     <u>Termination for Material Breach</u>.  If either party defaults by the failure to comply in all material respects with the terms of this Agreement, the other party may terminate this Agreement by giving at least 30 days prior written notice to the defaulting party, specifying in reasonable detail the nature of the default, unless the defaulting party remedies the default within the 30 day period.  This provision shall not constitute an election of remedies by either party, and each party shall have and retain all rights and remedies that may be available at law or in equity in the event of breach or default by the other party.

    c.     <u>No Cause Termination</u>.  Either party may terminate this Agreement by providing ninety (90) days notice in advance.

    d.     <u>Effect of Termination</u>.  Termination of this Agreement shall not affect the completion of students currently enrolled and participating in clinical rotations.

11.     <u>Disclaimer of Intent to Become Partners</u>.  The Facility and the Educational Institution shall not by virtue of this Agreement be deemed to be partners or joint venturers.  Neither party shall incur any financial obligation on behalf of the other.

12.     <u>Notices</u>.  Any and all notices, consents or other communications by one party intended for the other shall be deemed to have been properly given if in writing and personally delivered, transmitted by electronic means, or deposited in the United States first class mails, postpaid, to the addresses or numbers set forth below the signatures of the parties.

13.     <u>Confidentiality</u>.  The Educational Institution shall, and the Educational Institution will require Faculty and Students to keep confidential and not divulge to anyone else any of the proprietary, confidential information of the Facility, including patient and peer review information, unless such information (a) is or becomes generally available to the public other than as a result of disclosure by the Educational Institution or any of the Students, or (b) is required to be disclosed by law or by a judicial, administrative or regulatory authority.  The Educational Institution, Faculty, and Students shall not use such information except as required to provide patient care services in the Clinical Rotations.

14.     <u>HIPAA Compliance</u>.

a.      Both parties are committed to complying with the standards contained in the Health Insurance Portability and Accountability Act of l996, as it may be amended from time to time (HIPAA) and the Federal Privacy Rule concerning the use and disclosure Protected Health Information ("PHI") as that term is defined in HIPAA.

b.      The Educational Institution must, as the Educational Institution shall require the Faculty and Students to, appropriately safeguard the PHI of patients, in accordance with applicable provisions of the HIPAA Health Insurance Portability and disclosure protected health information solely for the education and treatment purposes contemplated by this Agreement.

c.      With respect to information obtained or received from the Facility, the Educational Institution shall:  (i) not use or further disclose the information other than as permitted or required by this Agreement or as required by law; (ii) use appropriate safeguards to prevent use or disclosure of the information other than as provided for by this Agreement; (iii) report to the Facility any use or disclosure of the information not provided for by this Agreement of which the Educational Institution becomes aware; and (iv) require that any agents, including a subcontractor, to whom the Educational Institution provides protected health information received from, or created or received by the Educational Institution on behalf of, the Facility agrees to the same restrictions and conditions that apply to the Facility with respect to such information.

d.      The Educational Institution students and faculty participating in the clinical training (collectively, the "Participants") may have access to individually identifiable health information related to the patients of the Facility.  The parties agree that access to PHI shall be limited to the Participants and that individually identifiable information shall not be removed from the premises of the Facility.  The parties acknowledge that the Participants will use information from the medical records in classroom presentations; however, neither the names nor any other information that would identify a patient will be removed from the Facility or used in classroom presentation.  Furthermore, other than as set forth in this Agreement, the Educational Institution shall not require or request access to any PHI.

15.     <u>Rights in Property</u>.  All supplies, fiscal records, patient charts, patient records, medical records, imaging documents, computer-generated reports, pharmaceutical supplies, drugs, drug samples, memoranda, correspondence, instruments, equipment, furnishings, accounts and contracts of the Facility shall remain the sole property of the Facility.

16.     <u>Non-Discrimination</u>.  The Educational Institution and the Facility agree not to discriminate against any employee, applicant, or student enrolled in the clinical experience because of age, color, national or ethnic origin, political affiliation, religion, handicap, disability, gender, or sexual orientation, status as a disabled veteran or veteran of the Vietnam era.

17.     <u>Facility Policies and Procedures</u>.  The Educational Institution shall, and the Educational Institution must require Faculty and Students to, comply with the policies, rules, and regulations of the Facility as provided to the Educational Institution by the Facility.

18.     <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

19.     <u>No Assignment</u>.  Neither party may assign its rights or delegate its duties under this Agreement without the prior written consent of the other.

20.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and shall insure to the benefit of, the parties and their respective legal representatives, successors and permitted assigns.

21.     <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Maryland.

22.     <u>Rights Cumulative</u>:  No Waiver.  No right or remedy conferred in this Agreement upon or reserved to the Facility is intended to be exclusive of any other right or remedy.  Each and every right and remedy shall be cumulative and in addition to any other right or remedy provided in this Agreement.  The failure by either the Facility or the Educational Institution to insist upon the strict observance or performance of any of the provisions of this Agreement or to exercise any right or remedy shall not impair any such right or remedy or be construed as a waiver or relinquishment with respect to subsequent defaults.

23.     <u>No Third-Party Beneficiaries</u>.  This Agreement is not intended to confer any right or benefit upon, or permit enforcement of any provision by, anyone other than the parties to this Agreement.

24.     <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding and agreement of the parties with respect to its subject mater and cannot be changed or modified except by another agreement in writing signed by the parties.

25.     <u>General Provisions</u>.  The Educational Institution, or any individual assigned by Educational Institution to provide services pursuant to this Agreement, specifically including all Students, is not and at no time has been excluded from participation in any federally funded health care program, including Medicare and Medicaid.  Educational Institution hereby agrees to immediately notify Hospital of any threatened, proposed, or actual exclusion of Educational Institution or any individual providing services to the Hospital, including any Student, from any federally funded health care program, including Medicare and Medicaid.  In the event that Educational Institution or any individual providing services to the Hospital, including any Student, is excluded from participation in any Federally funded health care program during the term

of this Agreement, or if at any time after the commencement date it is determined that Educational institution or any individual providing services to the Hospital, including any Student, is in breach of this section, this Agreement shall automatically terminate as of the date of such exclusion or breach.  Educational Institution further agrees that any individual employed or contracted by Educational Institution who is excluded from participation in federally funded health care programs during the term of this Agreement shall automatically be deemed ineligible and/or removed from providing any additional services to Hospital pursuant to this Agreement.

EDUCATIONAL INSTITUTION:     [Educational Institution]

By_____
                                                    (Signature)

Title_____


_____
                                                    (Printed Name)

Address:

              _____

              _____

E-mail:_____


FACILITY:                              [Hospital Name]

By_____
                                                    (Signature)

Title_____


_____
                                                    (Printed Name)

Address:

              _____

              _____

E-mail:_____